**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0926n.06
Filed: December 22, 2006

**No. 05-4067**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHAEL LAWRENCE BURGESS, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and McKEAGUE, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM. The defendant, Michael Lawrence Burgess, appeals from his convictions on three counts of possession of crack cocaine with intent to distribute, one count of possession of a firearm in the furtherance of a drug trafficking crime, and one count of being a felon in possession of ammunition. Following the district court's imposition of an effective prison sentence of 360 months, Burgess contends on appeal that the evidence adduced at trial was insufficient to support the jury's verdict and that his trial attorney provided him with ineffective assistance of counsel. We conclude that the defendant's challenge to the sufficiency of the evidence is without merit and that his Sixth

---

[*]The Hon. Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Amendment challenge is best reserved for collateral review.  We therefore affirm the judgment of the district court, but we also find it necessary to remand the matter for correction of a minor clerical error in the judgment, pursuant to the provisions of Rule 36 of the Federal Rules of Criminal Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

The record in this case establishes that the defendant was found to be in possession of crack cocaine on three different occasions over a nine-month period between December 2003 and August 2004.  Burgess insists that the circumstances indicate his guilt of mere possession of the drug  for his own personal use.  The government takes the position that the following facts establish possession with intent to distribute.

### December 18, 2003, Arrest

On the first occasion, Columbus police received a report of a man threatening a woman with a gun in the vicinity of 2381 Apple Street.  Arriving at that location, Officers Michael Kegley and Bradley Wannamacher noticed an individual sitting in a truck parked on the grass with both its motor and its lights turned off.  As they directed that person out of the driver's side of the vehicle, the officers noticed a second person, later identified as defendant Burgess, crouched as though hiding in the front passenger seat.  After also removing Burgess from the truck, the police recovered two loaded firearms from the floor

on the passenger side of the vehicle.  A subsequent pat-down of the defendant yielded an electronic scale, a bag of marijuana, and a total of 12 grams of crack cocaine, an amount that later trial testimony indicated would sell for $400 to $1200, depending on how the material was divided and packaged.  However, the officers found no paraphernalia in the truck that could be used to smoke the crack cocaine, no cigars (in which the crack cocaine could be combined with marijuana or other substances for smoking purposes), no evidence of cigar smoke, and no odor of crack cocaine that had recently been smoked.

According to the police, mere users of crack cocaine are not usually found with 12 grams of the illegal substance in their possession; rather, only dealers of narcotics generally carry such large amounts with them.  Officer Kegley further testified at trial that he could not recall ever arresting a simple user of narcotics who invested in, used, and carried a digital scale and who did not carry with him or her paraphernalia for smoking crack, especially if the individual was then in possession of the illegal substance.

**May 15, 2004, Arrest**

Additional trial testimony recounted how two other Columbus police officers spotted the defendant sitting in the passenger seat of a vehicle driven by Burgess's girlfriend, Edith Dixon, on May 15, 2004.  Because the officers recognized Burgess and were aware that an outstanding warrant existed for his arrest for failing to appear for a court date related to the December 2003 arrest, Officers Richard Griggs and Brett Slaughter then effected a stop of the automobile.  A search of the vehicle yielded two loaded firearms )one found

under the driver's seat and the other under the passenger's seat) an electronic digital scale, two film canisters containing crack residue, and scattered crumbs of crack cocaine. Searches of the two occupants of the vehicle resulted in discovery of a baggie of marijuana, a baggie of crack, and approximately $80 on the defendant, and crack cocaine and approximately $200 on Dixon. Although a total of 3.3 grams of crack was recovered by the police, officers did not observe Burgess or Dixon using crack, did not detect an odor of smoked crack cocaine, and found no smoking paraphernalia or cigars in the vehicle. After being handcuffed, transported to police headquarters, and advised of his rights not to talk to the police, the defendant nevertheless "claimed that all of the narcotics, contraband, and the guns that were found in the vehicle were his."

**August 14, 2004, Arrest**

Three months later, Officer Griggs was engaged in surveillance of a suspected crack house in Columbus when he observed the defendant arrive on the scene and hand another individual something from a container Burgess produced from his pants pocket. The police were unable to detain the individual seen with Burgess, but after following the defendant to a nearby store, Griggs arrested Burgess and recovered from him $900 in cash and a film canister that contained four grams of crack cocaine. Again, however, police found no paraphernalia on the defendant's person that would have been of use in actually ingesting the illegal narcotic.

Based upon these facts and observations, as well as upon information that the ammunition found in the firearms Burgess claimed were his was manufactured outside the state of Ohio, and information that the defendant had previously been convicted of a felony, the government obtained a seven-count indictment against Burgess. At trial, the defendant testified in his own defense, admitting that he used crack cocaine but denying that he ever possessed it with the intent to sell it to others. He further disputed the inference that the quantities of the drug recovered from him provided evidence of his status as a seller of narcotics. Instead, he testified that crack addicts would purchase whatever amount of the drug they could afford: "If you've got $50, you're going to buy $50. If you've got $100, you're going to buy $100."

On direct examination, the defendant confessed to possession of the 12 grams of crack recovered on December 18 and to the 3.3 grams of crack found in Edith Dixon's car on May 15. However, he denied possessing the narcotics that served as the basis for the August 14 arrest. Burgess claimed that he had admitted ownership of the guns in Dixon's vehicle only to protect her from a prosecution that could have sent her to prison for life. Additionally, he admitted his ownership of the electronic scales confiscated from him, but he claimed that he purchased those scales only to ensure that he was not cheated during his own purchases of drugs for personal use.

Faced with conflicting accounts of Burgess's possession of firearms and his intent in possessing crack cocaine, the jury credited the testimony of the prosecution witnesses

in almost all instances. The jury found the defendant guilty on all three counts of possession of crack with intent to distribute, on one count of possession of a firearm in furtherance of a drug trafficking crime, and on one count of possessing a firearm after having been found guilty of previous felonies. The jury did, however, acquit Burgess on the charges of possession of a firearm in furtherance of the December 18 drug crime and of being a felon in possession of a firearm during that offense. In light of Burgess's significant prior criminal history, the district judge imposed an effective prison sentence of 360 months for the five convictions. The defendant now appeals from that judgment.

## DISCUSSION

### Sufficiency of the Evidence

Burgess first contends that the evidence adduced at trial by the government was not sufficient to prove his guilt of possession of crack cocaine *with intent to distribute* or to prove that he possessed firearms *in furtherance of a drug trafficking crime*. Rather, he argues, the relatively small amount of drugs with which he was caught in each of the three arrests was consistent with personal use, and that his mere possession of the firearms recovered from Edith Dixon's vehicle does not necessarily mean that the weapons were to be used to facilitate a drug trafficking offense.

Ordinarily, in analyzing any challenge to the sufficiency of the evidence, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, moreover, "we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1603 (2006). Where, as in this case, however, a defendant fails to renew a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure at the close of all proofs, our "appellate review is limited to determining whether there was a manifest miscarriage of justice[, which] exists only if the record is devoid of evidence pointing to guilt." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (internal quotation marks and citations omitted).

No such evidentiary vacuum exists in this case. Although Burgess contends that the government offered no proof to establish that the amount of drugs found was inconsistent with personal use, that the prosecution failed to put forth evidence of a high street value of the contraband, and that no cash was found on the defendant, of the trial testimony refutes each of those claims. Testifying police officers asserted, for instance, that only drug dealers, not users, carry as much as 12 grams of crack at one time; that users ordinarily possesses only a rock or two of crack at a time, not four grams; that they had never previously arrested any user who was not also in possession of paraphernalia necessary to smoke the crack cocaine that had just been purchased; that Burgess was in possession of $80 at one arrest and $900 at another; that the street value of 12 grams of crack could be as much as $1,200; that they had never seen a non-dealer with electronic

scales like the ones confiscated from the defendant; and that three or four grams of crack cocaine could easily supply a user for a week.

In addition, the prosecution offered evidence during trial that the firearms recovered from Edith Dixon's vehicle – weapons that Burgess admitted were his – were possessed in furtherance of a drug trafficking offense. In *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001), we held that "[i]n order for the possession [of a firearm] to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." Other factors may also be considered by a court, but any attempted listing of such considerations is necessarily non-exhaustive. Indeed, as noted in *Mackey*, the ultimate determination is simply whether the firearms served to further the commission of the drug trafficking offense as opposed to, for example, "innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.*

In this case, the firearms that Burgess initially admitted owning, but later disavowed, were loaded and were hidden under the seats of the car in which the defendant was a passenger. Consequently, Burgess enjoyed easy and immediate access to the dangerous weapons that were specifically placed in a location from which they could be used to protect not only illegal narcotics but also the individuals involved in the distribution of those drugs.

With no evidence in the record of actual sales by the defendant, the record obviously does not present an ironclad case against Burgess in terms of intent to distribute.

In this case, however, such certitude is not required. What is clear is that the appellate record is not "completely devoid of evidence" that Burgess possessed crack cocaine with the intent to distribute and that he possessed firearms in furtherance of drug-trafficking, as charged. Under these circumstances, we cannot say that the defendant's convictions represent a manifest miscarriage of justice. We therefore conclude that the defendant's challenge to the sufficiency of the evidence is without merit.

Even so, we must remand the case to the district court for correction of the judgment. We have explicitly recognized "that 18 U.S.C. § 924(c) criminalizes two separate and distinct offenses." *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). Subsection (c)(1)(A), in relevant part, applies to "any person who, *during and in relation to* any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm," as well as "any person . . . who, *in furtherance of any such crime, possesses* a firearm." Burgess clearly was charged in the indictment with possession of "one or more firearms . . . in furtherance of a drug-trafficking crime," and he was convicted of that same crime. Inexplicably, however, the district court's judgment states that Burgess "is adjudicated guilty of . . . Possession of a Firearm *in relation to* a Drug Trafficking Crime." (Emphasis added.) Because such an improper mixing of the elements of separate offenses did not occur at any other point in this prosecution, the lone erroneous reference in the judgment itself to an offense other than that charged in the indictment must be viewed as a harmless, clerical error that may be

corrected by the district court at any time "[a]fter giving any notice it considers appropriate."

FED. R. CRIM. P. 36.

## **Ineffective Assistance of Counsel**

In a final appellate issue, the defendant asserts that his trial attorney provided him with ineffective assistance of counsel. Specifically, Burgess submits that defense counsel: failed to pursue a suppression motion to resolution; failed to challenge the lack of disclosure of exculpatory evidence; failed to conduct a complete investigation of the crime scenes; failed to communicate with the defendant concerning plea offers and sentencing considerations; failed to move to sever the charges at trial; and failed to challenge the government's assessment of the weight and purity of the crack cocaine recovered from him. In *United States v. Martinez*, 430 F.3d at 338, we recently reiterated that such claims of ineffective assistance of counsel are best brought in a post-conviction proceeding under 28 U.S.C. § 2255 in order to allow the parties to develop an adequate record on the issues presented. Although the district judge and counsel for the defendant and the government did discuss some of Burgess's ineffective assistance of counsel allegations on the record, other of the current assertions were not presented to the court. Furthermore, even the discussions that did occur at trial on some of these matters did not afford Burgess the opportunity for cross-examination that might occur during a § 2255 hearing. Rather than attempt to patch together an assessment of the services actually provided by defense counsel on some claims and remand yet other claims for development of evidence, we

decline to address the merits of the defendant's ineffective assistance of counsel claim on direct appeal.

## CONCLUSION

For the reasons set out above, we conclude that the defendant has not met his burden of establishing that a manifest miscarriage of justice occurred as a result of the convictions established by the jury's verdict.  We therefore AFFIRM those convictions but REMAND this matter to the district court for correction of the clerical error evident in the judgment itself.