**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0416n.06

No. 07-6382

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 11, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| SAMUEL NEAL ANDERS, | ) | |
| | ) | M E M O R A N D U M |
| Defendant-Appellant. | ) | O P I N I O N |

BEFORE:  GILMAN and McKEAGUE, Circuit Judges; and GRAHAM, District Judge.[*]

McKEAGUE, Circuit Judge.  On August 17, 2007, defendant Samuel Neal Anders pled guilty to a one-count indictment charging him with wire fraud, in violation of 18 U.S.C. § 1343. He was sentenced on November 16, 2007, to a prison term of 41 months, a sentence at the high end of the advisory Sentencing Guidelines range.  On appeal, Anders contends his guilty plea should be vacated because the district court failed to comply with the requirements of Fed. R. Crim. P. 11(b) when it accepted his guilty plea without ensuring that he understood the charge and without properly determining whether there was a factual basis for the plea.  Anders also contends his sentence is marked by error in that the district court miscalculated the loss that resulted from the offense.  For the reasons that follow, we reject the first claim of error, but find the second has merit, necessitating remand for resentencing.

---

[*]Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

**I**

On February 27, 2007, the grand jury in the Western District of Tennessee returned a one-count indictment charging defendant Anders with wire fraud for actions taken by him on behalf of Capital Contractors, LLC ("Capital") of Middleton, Tennessee in 2004. The indictment charged Anders with having sent certain false and fraudulent information by facsimile transmission to Bradley Construction Company ("Bradley") of Clearwater, Florida in a bid to obtain goods and services on credit from Bradley under a construction contract in the amount of $114,994.49. Specifically, Anders was alleged to have fraudulently used, as part of the bid, the name "Howard Schwartz," falsely identified on Capital's corporate charter as one of its incorporators.

Bradley, in reliance on the bid, had awarded the contract to Capital and provided $114,994.49 to Capital. Moreover, Capital did partially perform under the contract—until terminated by Bradley for failing to complete the work on a timely basis. As a result of Capital's failure to complete performance, it is undisputed that Bradley sustained a total loss of $52,590.89. PSR p. 6.

Anders tendered his guilty plea to the district court on August 17, 2007, pursuant to an oral plea agreement. Under the agreement, the government agreed that it would recommend that the sentencing court award Anders maximum credit for acceptance of responsibility and impose a prison sentence at the low end of the applicable advisory Sentencing Guidelines range; that the relevant conduct for which Anders would be held responsible was limited to the loss amount set forth in the indictment, $114, 994.49; and that Anders' sentence of imprisonment would run concurrently with

a pending state court sentence. Plea tr. pp. 3-4. At the plea hearing, the Assistant U.S. Attorney recited the facts the government was prepared to establish, consistent with the allegations of the indictment, to prove defendant Anders's guilt. *Id.* at 13-15. Included among these facts was the anticipated testimony of Howard Schwartz to the effect that he did not know Anders and had not given him permission to use his name.

Anders acknowledged that he had received a copy of the indictment, reviewed it with his attorney, and understood the charge. *Id.* at 7-8. He testified that he was acquainted with Schwartz; they were to be partners in the concrete business, but the relationship did not work out. *Id.* at 15-17. Anders admitted using Schwartz's name without permission in the bid materials faxed to Bradley to obtain credit. *Id.* at 9, 17-19. Anders acknowledged that Bradley relied on the bid materials in awarding the contract to Capital, but insisted that, despite the fraudulent use of Schwartz's name, the bid was otherwise bona fide and he fully intended to do the work called for by the contract. *Id.* at 8, 16. Nonetheless, Anders made it clear that he wished to plead guilty to the charged offense. *Id.* at 16-19. Accordingly, the district court treated Anders' admitted unauthorized use of Schwartz's name in the bid submitted to Bradley to obtain the contract as a sufficient factual basis for the plea. *Id.* at 18-19.

On appeal, Anders contends the district court failed to comply with the requirements of Fed. R. Crim. P. 11(b) when it accepted his guilty plea without determining that he fully understood the charged offense and that there was an adequate factual basis for the plea. Anders concedes, however, that because he did not assert this objection in the district court, it is reviewable now only for plain error. To establish plain error, Anders must show that there is (1) error, (2) that is plain, (3) that

affects substantial rights, and (4) that affects the fairness, integrity or reputation of the judicial proceedings. *United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007). Moreover, because Anders seeks reversal of his plea-based conviction, he must make a heightened showing of prejudice. He must show there is a reasonable probability that, but for the district court's error, he would not have pled guilty. *Id.*

Under Rule 11(b)(1)(G), the district court is required, before accepting a plea of guilty, to inform the defendant of, and determine that he understands, the nature of the charge to which he is pleading guilty. At a minimum, the court must satisfy itself that the defendant understands the "critical" or "essential" elements of the offense. *Id.* at 760. "Rule 11(b)(1)(G)'s requirement that a defendant understand the essential elements of the crime is integrally related to Rule 11(b)(3)'s requirement that the district court determine that the plea has a factual basis." *United States v. McCreary-Redd*, 475 F.3d 718, 723 (6th Cir. 2007) (quoting *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004)). Under Rule 11(b)(3), the district court is required to ensure, based on the statements of the prosecuting attorney and the defendant and any other appropriate sources, that all elements of the offense, conduct and mental state, are satisfied by the defendant's admission. *Lalonde*, 509 F.3d at 762.

The offense Anders was charged with, wire fraud, requires proof of "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *Id.* at 762 (quoting *United States v. Gale*, 468 F.3d 929, 936-37 (6th Cir. 2006)). Anders now focuses on the third of these elements. He maintains the district court failed to establish that he intended to fraudulently deprive Bradley of money or

property. In fact, Anders insists that he intended to give Bradley, in exchange for money and credit received under the contract, fair consideration in the form of full performance under the contract. Indeed, Anders attempted to explain this at the plea hearing. Plea tr. pp. 8, 16. Anders further claims that because the district court did not expressly identify the elements of wire fraud and did not specifically advise him of the intent-to-deprive element, he was led to believe that his unauthorized use of Schwartz's name in the bid materials was, irrespective of any intent to deprive, sufficient to satisfy the elements of the offense. He thus argues that the district court failed to ensure that he understood the nature of the charge. Anders contends the district court's mishandling of the plea constitutes plain error effecting his substantial rights and seriously affecting the integrity of the judicial proceedings. He asks us to set aside his plea-based conviction and remand the matter for further proceedings.

The record, however, shows that when Anders, under oath, attempted to explain why he believed he was guilty, the district judge questioned the sufficiency of the factual basis for the plea. *Id.* at 8-9, 16. It was only after Anders conferred with counsel that he succeeded in satisfying the district judge that he understood the charge and admitted facts meeting the elements of the charge. In other words, the notion that Anders was improperly allowed to plead guilty because the district judge was remiss in his responsibilities is not supported by the record.

What Anders now claims not to have understood is that his admitted fraudulent use of Schwartz's name in the bid materials faxed to Bradley with the intent of obtaining award of the Bradley contract (*see* plea tr. pp. 9, 18-19)—with its accompanying promise of money and credit—*does* satisfy the elements of wire fraud. This is so notwithstanding Anders's professed

intent to fully perform under the contract. That is, even assuming Anders fully intended to perform Capital's contractual obligations once Bradley awarded the contract to Capital, his admitted use of a fraudulent scheme or artifice to obtain the contract in the first place, with its attendant financial benefits to Anders through Capital, is a sufficient factual basis to establish wire fraud.

In *United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003), we made it clear that although intent to "harm" or "injure" the victim is an essential element of wire fraud, this requirement is satisfied by a showing of intent to induce the victim "to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *Id.* at 487-88. In language even more specifically apposite to this case, the *Daniel* court observed: "It is sufficient that the defendant by material misrepresentations intends the victim to accept a substantial risk that otherwise would not have been taken." *Id.* at 488. The defendant's good faith belief that the victim ultimately will sustain no loss does not negate the requisite intent to defraud. *Id.*; *see also United States v. Christopher*, 91 F. App'x 471, 473-74 (6th Cir. 2004) (unpublished) (same).

Hence, Anders's admitted fraudulent use of Schwartz's name to induce Bradley to award Capital the contract does establish the requisite factual basis. To be sure, a clearer record could have been made. Yet, where both counsel and defendant himself expressed their assent to the adequacy of the record, we can find no fault in the district court's failure to belabor the point. Accordingly, we find no Rule 11 violation and no error in the district court's acceptance of Anders's guilty plea, much less plain error. Anders's first claim of error is therefore denied.

**II**

The sentencing occurred on November 16, 2007. The Presentence Report ("PSR") proposed a total offense level (adjusted downward three levels for acceptance of responsibility) of 14, and a criminal history category of V, yielding an advisory Sentencing Guidelines range of 33 to 41 months.[1] In relevant part, defendant asserted one objection to the PSR, contending the presentence investigator erred by determining the loss resulting from the offense to be $114,994.49, representing the total intended loss. Anders acknowledged that this was the "relevant conduct" amount agreed to in the plea agreement, but argued that Bradley's *actual* loss, identified in the PSR victim-impact section as $52,590.89, was the more appropriate amount. If this amount had been used in calculating the loss, the total offense level would have been 12 and the advisory Guidelines range would have been 27 to 33 months. The district court overruled the objection without explanation, ostensibly because of the parties' plea-agreement stipulation regarding the relevant-conduct amount. Sent. tr. pp. 8-9. The court went on to sentence Anders to a prison term of 41 months, the maximum under the applicable advisory Guidelines range. The court concluded that defendant's lengthy criminal history called for this sentence, in the interests of punishment, deterrence, and avoidance of sentence disparities. On appeal, Anders contends the district court erred by disregarding the pertinent application note prescribing the calculation of loss under U.S.S.G. § 2B1.1. It provides that the loss "shall be reduced" by the value of services rendered.

---

[1]The PSR is based on the 2006 version of the Sentencing Guidelines.

We review the judgment of sentence under the deferential "abuse of discretion" standard. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 591, 598 (2007). A district court will be deemed to have abused its discretion if it committed significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 597. While the district court's amount-of-loss determination, based on a preponderance of the evidence, is a finding of fact reviewed for clear error, the application of a particular Guidelines provision to the facts is a legal question subject to de novo review. *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir. 2004). An error of law is by definition an abuse of discretion. *United States v. Lawrence*, 555 F.3d 254, 261 (6th Cir. 2009).

Defendant Anders contends the district court erred as a matter of law in its application of U.S.S.G. § 2B1.1, resulting in an improperly calculated Guidelines range. Per application note 3(A), in the commentary under U.S.S.G. § 2B1.1, "loss" is defined generally as "the greater of actual loss or intended loss." Hence, the district court gave little heed to Anders's insistence (both at the plea hearing and at sentencing) that, despite his fraudulent use of Schwartz's name, he did not intend to cause loss to Bradley in the amount of $114,994.49. Inasmuch as the parties had stipulated to the $114,994.49 figure in the plea agreement, the district court was content to employ this amount as "the greater of actual loss or intended loss," irrespective of Anders's professed intent to have caused less or even no loss. However, the district court appears to have ignored application note 3(E), which provides in relevant part:

Credits Against Loss.—Loss *shall* be reduced by the following:

(i) The money returned, and the fair market value of the property returned and the *services rendered*, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected.

U.S.S.G. § 2B1.1, cmt. n.3(E)(i) (emphasis added).

Applying this instruction, it is clear that, whether the $114,994.49 figure is accepted as the "actual loss" or "intended loss," Anders was entitled to a credit against the loss in an amount equal to the value of services rendered by Capital under the contract. According to Bradley's Treasurer's reckoning, summarized in the victim-impact section of the PSR, and not disputed or objected to by either side, Bradley's "total loss" was $52,590.89. Accordingly, on the present record, it appears that Anders was entitled to have the $114,994.49 loss reduced by $62,403.60 to $52,590.89. The district court's apparent disregard of application note 3(E)(i) resulted in a miscalculation of the amount of loss and a miscalculation of the applicable advisory Guidelines range.

The sentencing transcript offers no explanation for the district court's oversight in this regard. We note that although Anders's counsel clearly stated his objection concerning the amount-of-loss calculation, he did not cite application note 3(E)(i) in either his written or oral objection. The district court may very well have been unaware of the credit-against-loss requirement. On appeal, the application note has been specifically cited and the government has offered no colorable justification for not applying it. The government argues simply that it was not clear error for the district court to rely on the parties' plea-agreement stipulation on relevant conduct as controlling the amount-of-loss calculation. We are not persuaded. While the relevant-conduct stipulation may have validly served to limit and define "loss" as defined at U.S.S.G. § 2B1.1, cmt. app. n.3(A), it cannot be

reasonably construed as a waiver of a defendant's right to the credit prescribed as mandatory under § 2B1.1, cmt. app. n.3(E).

It is thus apparent that the district court, by failing to apply the required credit against loss, miscalculated the applicable advisory Guidelines range, rendering defendant's sentence procedurally unreasonable. Defendant Anders is therefore entitled to resentencing.

### III

Accordingly, Anders's plea-based conviction is **AFFIRMED**. The judgment of sentence, however, is **VACATED** and the case is **REMANDED** for resentencing. Specifically, the district court shall apply the note 3(E)(i) credit against loss, as appropriate, in recalculating the applicable advisory Guidelines range before, on reconsideration of the 18 U.S.C. § 3553 factors, pronouncing the appropriate sentence.